T-Mobile USA, Incorporated T-Mobile USA, Incorporated T-Mobile USA, Incorporated Good afternoon. My name is, may it please the court, my name is Stephanie Clauston. I am counsel for T-Mobile, the appellant in this interlocutory appeal. We are here today to address why the district court erred in disregarding a clear unanimous statement in a recent Texas Supreme Court decision, City of Dallas v. Sanchez. The Sanchez case involved strikingly similar 9-1-1 circumstances to those at issue here. And there, the Texas Supreme Court unanimously articulated the following rule. Thus, the use of property that simply hinders or delays treatment does not actually cause the injury and does not constitute a proximate cause of the injury. The Texas Supreme Court statement and plaintiff's theory of causation in Sanchez could not have been any more clear. Here, like Sanchez, plaintiffs do not allege that T-Mobile's telecommunications equipment actually caused any physical trauma to Brandon Alex, only that it malfunctioned to hinder plaintiffs from timely receiving medical assistance from an independently caused physical trauma. Thus, here, like Sanchez, dismissal as a matter of law is required under the Sanchez rule. The district court recognized this, your honors, but nonetheless denied appellant's motion to dismiss solely on the grounds that the Sanchez statement was somehow dicta. After subsequent briefing, however, the district court somewhat backtracked and permitted T-Mobile to certify this issue to the court. And that narrow issue is why we're here today, to decide whether the district court erred in ignoring the Sanchez statement as merely dicta. There are two broad reasons that the district court did err, your honors. First, the Sanchez statement was not dictum. Far from it. It was necessary to the result. It was alternatively sufficient to the result in Sanchez, and it appeared at the end of the Texas Supreme Court's long explication of the governing rules of laws in Texas. Second, even if it were somehow dictum, the district court was not free to disregard it. The statement was clearly considered. It was deliberately made, and therefore, at the very least, it was judicial dictum deserving of deference from the district court sitting in diversity below, and therefore, wholly apart from the doctrine of judicial dictum, because it was a recent, clear, and unanimous on-bonding decision from the Texas Supreme Court. The district court was not free to disregard it under the principles of Erie. Either of those two broad reasons are sufficient to require a reversal of the district court. Taken together, we believe they're insurmountable here. Unless your honors prefer that I address a particular issue, I will take the two broad reasons and defer the court in turn. The first question is, did the district court err in disregarding the Sanchez statement as DICSA? We believe there are three reasons why the answer to that question is yes. First, the necessity of the Sanchez statement to explain the result. Second, the sufficiency of the Sanchez statement to explain the rule. And third, that it occurs in the part of the opinion, after a long explication of governing rules of law, that go through proximate cause. It is undisputed in this case, from either side, that necessity is a touchstone of precedential value and status here. The only dispute is whether or not that evidence to evade the precedential status and the district court's ruling that this was DICTA fail here. First, in Sanchez, the Texas Supreme Court found in a recent decision, one that we had come down right before we had argued the Cook case, another 9-1-1 dispute involving the City of Dallas and my client, T-Mobile and Metro PCS. In Sanchez, the Texas Supreme Court found that the alleged malfunction delayed potentially life-saving assistance to Mr. Sanchez, and yet, still concluded in the context of a Rule 91A case, that as a matter of law, that the malfunction of the telephone system could not be a proximate cause of Mr. Sanchez's death. In other words, the Texas Supreme Court found that, but for the malfunction, the responders would have reached Mr. Sanchez in time to save his life, and also, that as a matter of law, that was not enough to establish proximate cause. The only way to explain this result is that in the context of a 9-1-1 case, the simple providing of equipment that hinders and delays, but does not exacerbate or in any way hasten the injury, cannot be, as a matter of law, proximate cause. It cannot meet the first element that is required to overcome T-Mobile's immunity in this case. And therefore, it was a necessary part of the Sanchez statement. Apart from the simple hindering or delaying assistance, if you remove the Sanchez rule from the court's decision, they could not have found both that the malfunction prevented life-saving assistance, and that as a matter of law, the malfunction could not be a proximate cause of Mr. Sanchez's death. You know why the malfunction occurred? In the Sanchez case? The malfunction, the alleged malfunction in this case, in T-Mobile, in this case? In this case, it is alleged that there was some type of software or other defect that prevented the babysitter from being able to connect to 9-1-1. So that's just never an answer? There was an alleged connection, but not a connection to the 9-1-1 PSAP system. There was, in this case, medical assistance that was provided. It was delayed. In the Sanchez case, there was actually no medical assistance ever provided to Mr. Sanchez. Right, they went to the wrong apartment, I know. But in this case, did the babysitter keep calling back and not be able to connect, or was she on hold for 40 minutes? Procedurally, what happened to your equipment? The allegations are that she hung up and called back several times and continued to go into a loop of being on hold, and that there was not a message that was coming from the City of Dallas PSAP system that said, stay on the line, do not hang up. So that each time she called back, because of the City of Dallas system, she was put at the end of the line. So does that mean that there was no one to answer the call, or just that the call never went through? The call did go through, but it was not answered. So where was the person who was supposed to answer the phone? That is the City of Dallas 9-1-1 PSAP system. Right. So why didn't it get answered? It went to the reporting? Her phone call was continuously, Your Honor, put on hold, or was in the queue for the 9-1-1 system. That is what is alleged here. In Sanchez, and in some of the other prior decisions of Cook, from this court, similar type of allegations about a 9-1-1 delay and a malfunction in the 9-1-1 system led to a delay in receiving medical assistance. That was different. They went to the wrong apartment. They didn't know there were two calls. This is a situation where no 9-1-1 person was actually in contact with the babysitter, right? That is the allegation in this court. And so what was wrong with the equipment? Did it get fixed? It is fixed, Your Honor. That is outside the record, but there have been upgrades and fixes from the City of Dallas system. The 9-1-1 system is an intricate system to mobile and is just one part of that system that is a carrier just like AT&T and Verizon. They provide the connection to the PSAP. They do this across the nation on a daily basis. This is just one part of the system, but the system on the City of Dallas side has been reported that the PSAP system has been working and is up and running, Your Honor. We're not aware of, at least from our perspective, any other issues with the City of Dallas system. You filed a motion to dismiss on immunity? Yes, Judge. How much discovery preceded the filing of the motion, or was there any? There was no discovery, just like there was no discovery in the Sanchez case because the motion came up on a 9-1-A motion. The prior case in Vicki Cook versus City of Dallas and T-Mobile and Samsung also was a 12-B motion to dismiss. Whether or not there was a malfunction with some T-Mobile equipment or software or anything else has neither been admitted nor denied? Well, we are basing our motion to dismiss taking all of the plaintiff's alleged facts as true, and that is the posture of this case. That is the posture of which Judge Lynn allowed us certification on appeal. In this interlocutory appeal, the only question that is certified to this court is the narrow legal question of whether or not the district court must have followed the Sanchez rule. Speaking of certifying questions, let's assume that your first argument is it's not dicta. Is that right? That's correct. Then your second argument is if it is, it's the kind of dictum that has to be deferred to by the district court. That is correct, Your Honor. If it's some category of dicta, the one that probably needs to be deferred to by the district court, why shouldn't we just certify this question to the Texas Supreme Court? Well, we would first object to any request for certification to the Texas Supreme Court. It's not appropriate. Well, we could do it without a request from either party. That is true, Your Honor. However, it doesn't meet the requirements of a request for certification to the Texas Supreme Court because in the cases that the certification is proper, the Texas Supreme Court has not spoken on the issue. Here, the Texas Supreme Court has spoken on the issue and has clearly spoken. There are no other contradictory rulings from the Court of Appeals or any other court that has presidential status. But if we determine it's dicta and not an essential part of that ruling, then wouldn't it be appropriate to ask the Texas Supreme Court to answer the question? No, Your Honor, because even if it were dictum, if it is an explication of the law, if it is sufficient to independently support the outcome in Sanchez, then it is binding dictum that must be followed by the district court. The district courts in diversity did not have the ability to disregard, in a context similar to this, an approximate cause ruling under 9-1-1, that statement was dictum that did not need to be followed. The only instance of dictum that did not have to be followed by the district court is overture dictum, and this does not fall in that category. There's been absolutely no case or authority cited by the plaintiffs that would put it in that category, and therefore the district court had to follow it, even if it were dictum, we don't believe it is. And because it is recent, Texas Supreme Court, the federal court sitting in diversity applies where the Texas Supreme Court would come out on this issue. The Texas Supreme Court has clearly said where it came out. Wouldn't the district court have to follow if it was judicial dictum? It does, Your Honor. There is only one small carve-out that the district court would not have had to follow, and there has been no citation either by the lower court below in its decision in putting this forth that it was dictum, something that had not been briefed by either side. But during the briefing, both in our request for certification and to this court, there has been no argument that it falls within the non-binding type of dictum, because it was sufficient to reach the result, even if it were not necessary. All right. Thank you, counsel. Thank you. Belli. May it please the court. In this appeal, plaintiffs ask that the court not allow T-Mobile to upset the legislative compromise that was reached when the Texas legislature has passed two statutes. The first statute was passed in 1985, Texas Tort Reforms Act, and that statute, the particular provision that was just discussed, dealt with government immunity and use of property issues. That was that statute. At that time, those parties who had interest before that legislature, whether it was municipalities or others, they discussed with the Texas legislature. Years later, when they were considering the Texas Health and Welfare Act of 1971-053, you had a different set of parties, different set of parties with interest before the Texas legislature. It was at that time that they stripped immunity for gross negligence, recklessness, and intentional conduct by providers of telecommunications services involved in 9-1-1, developers of software involved in 9-1-1, and manufacturers of equipment. Two entirely different statutes, two entirely different parties of interest. Here, in this case, it involves more than just property. Here, Justice Clement, as you were discussing about whether there was a connection, there was a software issue. Well, that's not tangible personal property that would apply if you're looking at the Tort Claims Act. That's software. That's intangible property. The same with the services. There has nothing to do with the use of property statute in the Texas Tort Claims Act. The technology, Your Honor, did not work. There was no connection. The T-Mobile software never worked. And T-Mobile was aware of that. Your Honor, you asked whether there was any discovery. There was publicly available discovery. We had information from the Dallas Morning News about the software that didn't work. T-Mobile had this. We had information from the city council. They had reported to T-Mobile that the software didn't work. The Dallas mayor, again, these are publicly available reports. And, again, we're talking about software, not property. There's no reading of Sanchez that would preclude us from bringing claims against T-Mobile for their faulty services, their faulty software. Sanchez just doesn't apply. T-Mobile is trying to conflate proximate cause and this use of government property to try to craft a new rule for itself. That's not appropriate. It's not appropriate for this court. It's not appropriate for the district court. And the district court properly recognized that that's not what was intended. That's why the district court, and the district court never backtracked. The district court decided that she would allow the parties to try to certify the question so that the case can proceed. And I want to point the court, and this is in our brief, but a recent case by the Texas Supreme Court is Harris County versus Anaib. And in that case, it makes clear that analyzing use of property by the government entity is inappropriate for a private claim against a private company. In analyzing the negligent claim, the Anaib court said, in a different case, these allegations could have some relevance to a claim against a private employer, but Harris County is not a private employer. So it's saying that these same claims that we're making here, the negligence claims, would have relevance against a private employer. The district court gave several examples of Texas Supreme Court cases that reject T-Mobile's contention. That's in the record in the court's order, record 396, Bustamante versus Ponte, Dusick versus State, Columbia Medical versus Hogue. And in that case, in the complaint, we list 23 errors and omissions. The first error is a failure to provide services and a failure to advise customers of the lack of technology or the lack of services. That's what happened here. They did not advise our clients that there was a lack of capability, capability that every other phone manufacturer had. This was a T-Mobile-specific problem. There are other manufacturers who provide the same type of information by T-Mobile. Again, this is publicly available information. If you look in the record at 419 through 20, we listed all of the things that T-Mobile didn't do as it relates to their services. Again, nothing to do with property, as discussed in Sanchez. Their software, again, nothing to do with Sanchez. T-Mobile had an outage. They had previous outages, Your Honor, that had affected over 50 million people. Again, it's in the record in the complaint at page 412, paragraph 16. T-Mobile had been fined $17.5 million for these same type outages in other places. They knew about the outages because they had been publicly reported. This all occurred before the death of Mr. Alex. But they weren't all 911 outages, right? They were. I thought it was use of... They were fined $17.5 million for 911 outages. And they knew about, these were across the country, in other locations. But it was the same type of outage, a 911 outage. And then they knew, Your Honor, about these specific type outages, the specific type software issues. They knew about this. In fact, it had caused another death before it caused Mr. Alex's death. And the mayor of Dallas, again, he got on TV. He said he had already contacted the T-Mobile engineers. So this is information that T-Mobile knew about. This is the gross negligence. Again, we're talking about software, not property, not tangible personal property. So T-Mobile knew that citizens had died from this specific type of issues. Now, if the court were to apply some new rule called hinders or delay, simply hinders or delay, it's clear that even property, even if you focus just on property, it can do more than simply hinder or delay. There can be a direct cause from it. There can be the simply delay. There can be a hasten or exacerbates. And the cases, Sanchez says, if it hastens or exacerbates, it's actionable. Cook v. City of Dallas referred to by T-Mobile at page 315 and 321, it says that if it hastens or exacerbates, it's actionable. The plaintiffs have argued in the district court that it hastened or exacerbated. The complaints established facts that say that it was exacerbated by T-Mobile's actions. So therefore, it's actionable. But here it totally precluded it. The T-Mobile connection never worked. After over 40 minutes, there was never a connection. And the way the technology works is it goes from the phone to the T-Mobile tower. If it were an AT&T call, it would go to an AT&T tower. Then it never got, the next connection would be to send it from the PSAP to the City of Dallas 911 center. It never worked. The software never worked. No live operator. So we're not looking at a Dallas, City of Dallas operator not picking it up. The technology never got the call to the PSAP or to the City of Dallas. Again, this was all a T-Mobile. Was that problem only with regard to 911 calls? Yes, and only T-Mobile 911 calls. All right. So the same phone was used to call the grandmother in this case? Correct. All right. Correct. But again, the only thing that wasn't working was, as you pointed out, the 911. All right. But otherwise, it, you know, you're getting the same, she's hearing the same things on the phone. So the call of the babysitter was never aware that there was no connection, that she had not made a real connection. She's thinking that eventually someone, a live person is going to pick up. As far as whether the statement, again, the claims survive because they're outside of whatever analysis the court looks at if it applies the Sanchez case. But even if the court were to look at whether it's dicta, it's clearly dicta. It wasn't necessary to the result. If you look at not just the location of where that statement appears, but if you look at the analysis that the court made in Sanchez, you'll see that they looked at all kinds of factors. So there is no change of the approximate cause analysis in Sanchez. You still, the court, the district court looks at all factors alleged in the complaint. And if the district court believes that there are other factors alleged in the complaint that served as approximate cause or didn't serve as approximate cause, they can make that analysis. And this court in the Cook case did the same thing. So the other cases that T-Mobile refers to, so there hasn't been a case that goes along with what T-Mobile says. These are all T-Mobile arguments. There's no private company that has alleged, made these same allegations. These are all T-Mobile. All the cases where they use this statement, these are all T-Mobile cases. So this is a rule that T-Mobile is trying to craft for itself. So we ask that the court affirm the district court's denial of the motion to dismiss. Thank you, counsel. Rebuttal? Oh, I'm sorry. Go ahead. I didn't, what did you say? I said unless my colleague has already won the argument. Start talking. May it please the court. The one thing I really wanted to get up here and define is that what T-Mobile is asking for is an absolute rule that as long as all they do is hinder or delay someone's access to medical treatment, they do not have liability. That is what they are stating the Sanchez statement means. Personally, whether it's dicta or not, I think it's clear that the Sanchez statement does not stand for that proposition. If it did, the results would be absurd. Think of it this way. If an EMS provider was called out to provide an ambulance ride to a patient having a heart attack, they decided to stop for a sandwich and go on a detour, they would clearly have liability even though technically all they've done is hindered or delayed the treatment. So T-Mobile in failing to connect the call is doing exactly what an EMS provider would be doing if they stopped for a sandwich rather than delivering the patient to the ER. There's actually no question that the babysitter was in a worse position because of T-Mobile's defective 911 technology than they would have been in had there been a different carrier like AT&T or even no 911 service at all. Furthermore, T-Mobile could have sent a simple message that said, please be aware, we have some 911 outages. Please contact your local fire department, your EMT that's nearest to you, or proceed to a police department, something like that. But they didn't do any of that. And that's why we're here. And that's what makes this case so different from Sanchez, Kelly, and Cook. Each of those cases involved substantial attenuation. Each of those cases involved a call where someone was connected to 911. Each of those cases involved first responders actually arriving at the location in question. In this case... Well, but not really. They went to the wrong apartment. No, in Sanchez they had the exact... Well, for one, but not the other. Your Honor, if I'm not mistaken, in Sanchez they did have the apartment number for Matthew Sanchez, the decedent. But what about the other call? They didn't know there were two calls. There were two calls, and they made a mistake. And they thought that there had been two... The two calls were duplicative, when in fact they were not. But when the first responders in Sanchez went to the scene, they knew Matthew Sanchez's apartment number. That's essentially all the location information you can ask for a telecom entity to provide. And this goes into furnishing a condition. Essentially, T-Mobile, or in the Sanchez case, I don't know if you've heard this, but T-Mobile was the call to 911. And at that point, dispatchers and or the EMTs made mistakes. That simply furnished a condition, rather than actually causing the harm or injury. Whereas here, the injury was actually caused by the time wasted while on 911, fruitlessly hoping that the call would be answered and that aid would be rendered. And I just want to be clear, so the first argument was that Sanchez doesn't apply. Correct. Your argument is Sanchez applies, but it's distinguishable. I would actually agree that Sanchez doesn't apply, but I believe that even if it does apply, it doesn't stand for the proposition T-Mobile asks it to. All right. Because first, Mr. Pittman very correctly pointed out that the Sanchez case originates in a completely different statute, the Texas Tort Claims Act. That statute's not raised here. That statute's not discussed here. Judge Lynn did find there was some similarity in facts and found it very prudent to consider what the Sanchez case stood for. So it's true that there are factual similarities. All right. Well, you brought up Judge Lynn's ruling. Judge Lynn seemed to be saying that if she determined that the statement in Sanchez was not dicta, then her ruling would have been different. That seems to be what she was saying. And I think that's where we're getting— Is that right or wrong? Your Honor, I think we're getting very hung up on what's dicta and what's not. Judge Lynn clearly did not think that Sanchez stood for the proposition that there's an absolute bar to hinder or delay claims. That is clear. And if she did concede that, of course, this case would fall into that nexus. But at the same time, for any court, even the Texas Supreme Court, to overstep what the Texas legislature has clearly articulated as the tests and the circumstances in which a 9-1-1 provider should have immunity as the result of a careful legislative process, even if that's what the Texas Supreme Court did, it would have clearly overstepped its bounds and would be applying a completely different test that has no basis in law. I do want to speak a little bit more about the technical defects. We spoke a bit about the connection and the lack of connectivity. I think one of the main distinctions between our argument and the argument advanced by T-Mobile is that the babysitter was placed on what's called a phantom hold, so she never was connected, she never spoke to someone, she never had any reason to believe that she wouldn't be given aid soon. So that's one of the factual distinctions I think is critical. So what did she actually hear? I'm sorry? What did she hear when she dialed 9-1-1? In the allegations of the complaint, it says she was on a phantom hold, so essentially she wasn't connected to anyone. I don't know what a phantom hold is. Does somebody pick up and then the phone just goes silent or somebody pick up, you hear a dial tone? I'm just trying to figure out, you're Was there just a dead silence on the line? She wasn't connecting. So it wasn't continuing to ring though? That's my understanding. It was continuing to ring. It's my understanding that it was not continuing to ring. All right. All right. And there were three separate calls, each one longer than the last. The first call at 555 lasted approximately one minute, the second call a minute or two later lasted nine minutes, and the third call lasted nearly 30 minutes. All throughout this time, she could have been making efforts to render aid or otherwise assist in finding a different method. Yeah. So she could have used her phone to call the grandmother after call three? She did use her phone to call the grandmother between call two and call three. So she wasn't kept on hold for 40 minutes? That was the allegation? It was a total of 40 minutes that she spent on hold, under phantom hold. But the phone would have worked for her to call the grandmother or call the hospital? Correct. So if T-Mobile had sent a text message that said 911 was out, please contact your local EMS provider directly, she would have been able to contact them and probably would have received a response. The phone would have worked? Correct. Okay. Correct. Finally, I do want to indicate that I don't believe that certification is necessary at this time, because I do think that the results that would occur if we interpret the Sanchez case in the way that T-Mobile is stating are so absurd that they're plainly not what was Because in this case, there isn't an attenuation the way there was in Sanchez, Kelley, and Cook. It was a very direct link between the conduct of T-Mobile in failing to connect the call and the inability of the babysitter to supply help to Brandon Alex in a timely manner. Essentially, T-Mobile is attempting to create its own rule, even though the Texas legislature has clearly articulated the situations in which 911 service providers should have immunity and they're actually extensive. They're completely immune from ordinary negligence. So, to expand this... So, to ask it another way, when would they be liable under the Texas statute? I have never been able to think of a situation where if the hinder or delay analysis is applied, they would have liability, and T-Mobile has yet to offer it. And I believe that the Texas legislature would have never enacted a statute, such as 771.053 of the Health and Safety Code, if they did not intend for mobile carriers to have liability in certain limited situations, such as the egregious case here, where we have 911 issues starting in 2014, and even a death the previous week. But you said that information was in the public realm, or Mr. Pittman said that? Correct. But the public knew that 911 wasn't working for Dallas? Some people may have known if they followed in very close detail the Dallas Morning News. I mean, it's not something that was necessarily on the front page. It's something that we, as the attorneys, know about because we've researched it. But I lived in Dallas at the time, and I did not know. So, it's not surprising that Ms. Alex didn't either. Well, my time is up, but I would, again, request that this court please do not articulate a new rule and stick with the statute which the Texas legislature has enacted. All right. Thank you. Very much. Rebuttal. Thank you. Thank you, Your Honor. All of the arguments that we just heard from plaintiff's counsel are arguments where they're trying to say that Sanchez does not apply here or it's distinguishable. As Judge Graves correctly pointed out, the district court below said that if she were wrong, that this case were not just purely dicta that did not have to be followed by the district court, then it was dispositive. That's the issue on certification for appeal. Otherwise, the district court would not have properly given us a right to file the interlocutory appeal. And this court did not have to entertain the permissive appeal. The issue of application here, we argued this issue in the Cook case and this court in an unpublished opinion, but a recent unpublished opinion where we had some of the same counsel involved and T-Mobile, Metro PCS, and Samsung as defendants. In that case, the court found that the recent Texas Supreme Court case of Sanchez was persuasive and applicable to the proximate cause standard. We are in no way trying to make an argument that the Texas Health and Safety Code, as set forth by the Texas legislature, is to be rewritten. That is, it used the words proximate cause, and in doing that, it adopted the language and the precedent and the body of law that uses proximate cause. Also, there was an argument by plaintiff's counsel that the use of condition of property was somehow unique in the case law to only apply in the Texas tort claims context of governmental immunity. That is not true. There is a large body of case law that deals with premises liability and passive provision of property, condition of property that we have here. T-Mobile simply provided a part of a large system. There was a passive use of that property to call the 911 system in every circumstance, and that is what the legislature here was trying to strike a balance of when it set the standard of proximate cause and gross negligence. In almost every circumstance where someone is rightfully calling 911, it will be an emergency. What is an example of T-Mobile being found liable under Sanchez? What would be a proximate cause? Proximate cause under Sanchez is if T-Mobile in some way hastened or exacerbated. What does that mean? It could mean if, for example, there are towers involved and equipment that is located at the city of Dallas and other locations, that, Your Honor, could catch fire and cause the original injury. The towers could be a physical injury. It wouldn't be as a reaction to equipment not working. Well, unless they caught on fire. It could be either circumstance. So under the Texas Health and Safety Code and as articulated in proximate cause by Sanchez, it can be either the actual instrumentality of the harm or exacerbate or hasten. So there are a myriad of circumstances where the carrier could be liable. We haven't seen them in these circumstances. We didn't see it in Sanchez, and that is what they were articulating in Sanchez, that when you have not contributed to the circumstance that caused the death, when you have not contributed there but it's a mere rescue situation. And this is not inconsistent, Your Honor. It's a little interesting to me. You only have 20 seconds, but you said the circumstances that caused the death. And so in this case, is the injury the actual fall? Is that the injury or is the death the injury? The injury is the falling from the day bed. The babysitter. But the case is a wrongful death case, isn't it? It is. They have sued us for liability for Brandon Alex's death. All right. All right. Your time has expired. Thank you very much. The court will take this matter under advisement, and we are going to take a brief recess at this time.